715 P.2d 777

**The STATE of Arizona, Appellee,**

v.

**Efrain Corral RENDON, Appellant.**

**No. 2 CA–CR 3832.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 6, 1986.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Tucson, for appellee.

Charles M. Giles, P.C., Jim D. Himelic, P.C. by Jim D. Himelic, Tucson, for appellant.

## OPINION

HOWARD, Presiding Judge.

Appellant, convicted by a jury of one count of first-degree burglary and theft of property with a value of over $1,000, each with two prior, non-dangerous convictions, was given presumptive, concurrent prison sentences of 15.75 and 11.25 years, respectively.

On January 9, 1984, the Bradford residence in Tucson was burglarized. The next-door neighbor saw the burglary in process, called the police and described the burglary to them as it was taking place. She told the police that she saw two men loading property from the Bradford house into a brown pickup truck. She said both men had black or brown hair and that one was wearing a black baseball cap, a brown shirt, and had a gun stuck in the back of his pants. This telephone conversation was recorded by the police.

Officer Joy, a detective with the Tucson Police Department, was investigating another crime less than a mile away when he heard a police radio dispatch that the burglary was in progress and that the suspect vehicle was leaving the scene and heading east on Elvira. Officer Joy, who was driving an unmarked police unit, immediately left to try to intercept the suspect vehicle. Within a few minutes, he spotted the pickup and commenced following it. He observed appellant in the back of the truck wearing a khaki shirt and a black and white baseball cap. Detective Joy called

for assistance and within a short time a uniformed police officer, Officer Taylor, arrived. Both of these officers were able to stop the pickup truck. When the truck stopped, they observed three men running from it. Appellant was in the bed of the truck. His cousin Frank Rendon was identified as the person driving the truck, and a third person who ran from the pickup truck, was described as having light skin and blonde hair. Frank Rendon was arrested after he was located by a police dog in the immediate area. Appellant was not arrested on that date, and the blonde-haired occupant was never located.

At the trial, the next-door neighbor testified that when she was shown a photographic lineup containing appellant's photograph shortly after the burglary, she was unable to select a photograph of appellant from that lineup. She also was unable to identify appellant at trial as one of the two men she saw at the Bradford residence.

Appellant testified at the trial. He admitted that he was a co-worker with Mr. Bradford, and that he had been over to his house before. Appellant also testified that on the day of the burglary he had asked his cousin to take him to his sister's house so he could borrow some money from her. His cousin Frank came by in the pickup truck, and on the way to the sister's house they stopped and picked up another person whom appellant did not know. This was the light-skinned, blonde person who was later seen in the pickup truck by the police. After they picked up the blonde-haired stranger, they took appellant to his sister's house where they dropped him off and told him to wait until they got back. After Frank and the blonde-haired stranger left, appellant found out that his sister was not at home so he waited in the yard. About twenty or thirty minutes later, Frank and the stranger returned. They told him to jump in the back of the truck and hold on to a TV set in the bed of the truck. Appellant suspected that the goods in the back of the truck may have been stolen because the stranger had asked him previously if he could sell him some stolen property.

As appellant was riding in the pickup truck he observed the unmarked patrol car behind him, and when he realized that the driver was speaking over a radio telephone, he thought he might be a policeman. When the pickup truck stopped, he ran from the scene, as he was afraid of being caught because there was an outstanding arrest warrant for his failure to appear in a hit-and-run case. He also said that when he jumped from the truck, he grabbed a gun that was in the back of the truck. When he saw that the officers stopped following him, he dropped the gun and ran away.

Appellant and his cousin were tried jointly; however, his cousin was tried in absentia, having escaped from custody prior to trial.

Appellant presents the following issues. Did the trial court commit reversible error in: (1) Allowing Mrs. Bradford to give opinion testimony as to the value of the property taken? (2) Allowing the prosecution to play the tape recording of the conversation between the eyewitness and the police department? (3) Allowing the prosecution to impeach appellant with his prior felony convictions? (4) Denying a motion for severance? (5) Denying a mistrial based upon improper argument by the prosecutor? (6) Instructing the jury?

■ Various items of personal property were stolen from the Bradford residence, including two rifles and two handguns which were owned by Bradford prior to his marriage. Over appellant's objection, Mrs. Bradford was allowed to testify that the value of these weapons was $1,700. Appellant contends, the state concedes, and we agree that the admission of this testimony was error. The owner of property is competent to give an opinion as to its value. *Acheson v. Schaffer*, 107 Ariz. 576, 490 P.2d 832 (1971). Here, however, Mrs. Bradford was not the owner of the weapons. Assets which are the separate property of one spouse before a marriage retain that character after marriage unless that character is altered by an agreement between the spouses. *Sellers v.*

*Allstate Insurance Co.*, 113 Ariz. 419, 555 P.2d 1113 (1976). There was no evidence here that the character of the weapons had been changed by the agreement of the spouses. Nevertheless, Mrs. Bradford testified that the value of the rest of the property which was taken was in excess of $1,000. This justified the jury's guilty verdict on the charge of theft of property valued at over $1,000, and the error in permitting her to testify as to the value of the guns was harmless.

 Appellant contends that it was error for the trial court to admit into evidence the tape made of the neighbor's statements to the police describing the burglary as it occurred. We do not agree. Rule 803(1), Rules of Evidence, 17A A.R.S., contains a hearsay exception for "present sense impression," that is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." As stated by M. Udall and J. Livermore, Arizona Practice: Law of Evidence § 127 at 268 (2d ed. 1982):

> "The theory of this exception 'is that substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepresentation.' In addition, by its terms, this exception eliminates the risk of misremembering...."

Appellant contends that the trial court erred in permitting the prosecutor to impeach him with two prior convictions for theft and for conspiracy and possession of marijuana. He contends that the convictions were not sufficiently recent, being seven and eight years old, that there was no direct conflict between his credibility and that of the prosecution witnesses, that the priors were unduly prejudicial because theft was one of the charges for which he was being tried, and that the crimes of conspiracy and marijuana possession do not relate to credibility. The trial court did not abuse its discretion in admitting the prior convictions.

 In cases involving prior felony convictions, the state need only come forward with the date, place, and nature of the prior conviction in order to satisfy its initial burden of showing probative value. *State v. Williams*, 144 Ariz. 433, 698 P.2d 678 (1985). Once the state establishes probativeness, the defendant is permitted to rebut the state's showing of relevance by pointing out the prejudicial effect. If the defendant's evidence of unfair prejudice successfully counters the probativeness of veracity inherent in any prior felony conviction, the state will need to present additional evidence of probative value to sustain its burden of proof under Rule 609, Rules of Evidence, 17A A.R.S. Factors which the trial court should take into account in deciding whether the probative value of the evidence outweighs the prejudicial effect are the impeachment value of the prior, the length of time since the prior conviction, the witness' history since the prior conviction, the similarity between the past and present crimes, the importance of defendant's testimony, and the centrality of the credibility issue. Here, the dates of the felony convictions were well within the ten-year limit of admissibility set by Rule 609(b). As was stated in *State v. Williams*, supra, any prior felony is probative of the defendant's credibility, and here the defendant did take the witness stand. The prior conviction of theft was admissible even though one of the counts against him was for theft. See *State v. Bojorquez*, 138 Ariz. 495, 675 P.2d 1314 (1984). In view of the nature of the defendant's testimony in this case, his credibility was a central issue, and for that reason as well as the other reasons which we have given, the trial court did not err in allowing evidence of the prior convictions.

Appellant made a motion to sever his trial from that of the co-defendant Frank Rendon before trial, during trial and at the end of the trial. He points out that Frank Rendon had been positively identified by the eyewitnesses as being the person at the scene and that one eyewitness testified that she saw a picture of Frank Rendon on television after he escaped from the South Tucson jail. Appellant asserts this is a

case where the prosecution had a great deal of evidence against the co-defendant but very little evidence against him and that there was a possibility of a "rub-off" of that evidence against him. He also contends that, where the state intends to introduce evidence of other bad acts of one of the co-defendants, a severance should be granted.

The question of the severance of the trial of co-defendants is discussed at length by the court in *State v. Lawson,* 144 Ariz. 547, 698 P.2d 1266 (1985). The "spill-over" or "rub-off" theory involves the question of whether a jury's unfavorable impression of the defendant against whom the evidence is properly admitted will influence the way the jurors view the other defendant. Although a severance is rarely granted when this concern is raised, it must be given if a defendant can show that he would suffer substantial prejudice from a joint trial. Even if the defendant is unable to make this showing before the trial begins, the court has a continuing duty at all stages of the trial to grant a severance if prejudice does appear. Because a severance in the middle of the trial is a severe remedy, it should be resorted to only if prejudice flowing from a joint trial is beyond the curative powers of a cautionary instruction. The test as far as the "rub-off" theory is concerned is whether the jury can keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him. We find in the instant case that the jury was capable of keeping the evidence separate. The fact that Frank Rendon had escaped and was not present for trial, whereas appellant was present at the trial and testified, operated in appellant's favor. Furthermore, the trial court instructed the jury to consider the evidence against each defendant separately. See *State v. Wiley,* 144 Ariz. 525, 698 P.2d 1244 (1985).

During the final argument the prosecutor stated:

"Another thing that Mr. Couser mentioned, he said, 'Well, there is really something suspicious here, the fact that Efrain Rendon wasn't arrested until July of 1984.' Now he tells you not to guess, but he's asking you to speculate. There's been no evidence about a warrant was ever—whether it was served in relationship *to another offense,* whether Efrain Rendon was just walking down the street." (Emphasis added.)

Appellant did not object to this argument at the time it was made but, instead, waited until after the end of arguments to make a motion for a mistrial on the basis that the remark disclosed evidence of other bad acts, which were not introduced in evidence. Appellant contends that the trial court erred in not granting his motion for mistrial. We do not agree. The statement by the prosecutor that the evidence did not reveal whether appellant was ultimately arrested for some other offense or while he was innocently walking down the street was made in response to an argument by the defense lawyer that there was something sinister about the delay in making the arrest. Appellant himself had testified that there were other matters pending against him, including traffic violations and a hit-and-run case in which he failed to appear for trial, which could have resulted in warrants for his arrest having been issued. The trial judge summarily denied a mistrial motion, stating that there was no prejudice. We agree.

Appellant's last complaints have to do with instructions given to the court. We note that appellant did not object to the instructions and, in fact, specifically stated that there were no objections to the instructions as given. Thus, any error not amounting to fundamental error has been waived. Rule 21.3(c), Rules of Criminal Procedure, 17 A.R.S. Our review of the instructions discloses no fundamental error.

Affirmed.

HATHAWAY, C.J., and FERNANDEZ, J., concur.