225 P.3d 1148

**STATE of Arizona, Appellee,**

v.

**Marcus Ladale DAMPER, Appellant.**

**Nos. 1 CA–CR 09–0013, 1 CA–CR 09–0014, 1 CA–CR 09–0019.**

Court of Appeals of Arizona, Division 1, Department D.

March 2, 2010.

Terry Goddard, Attorney General By Kent E. Cattani, Chief Counsel Criminal Appeals/Capital Litigation Section, Michael T. O'Toole, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Kathryn Petroff, Deputy Public Defender, Phoenix, Attorney for Appellant.

## OPINION

JOHNSEN, Judge.

¶ 1 Marcus Ladale Damper, convicted of second-degree murder, contends the superior court erred by admitting in evidence a text message by the victim in violation of his rights under the Confrontation Clause and contrary to Arizona Rules of Evidence 403, 801 and 901. Finding no error, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 Damper shot and killed C, his girlfriend, while she lay on the bed in their Glendale apartment in the late morning of January 21, 2008.[1] Damper and Christopher Barron, who also lived in the apartment, were preparing to attend a Martin Luther King, Jr. Day event that morning. Throughout the morning, Damper and C. had argued because C. did not want Damper to go to the event; she was worried Damper's ex-girlfriends might attend and also feared violence might break out at the event.

¶ 3 At 11:21 a.m., C.'s friend, B., received a text message from C.'s cell phone. B. answered C.'s text with two of her own, but did not receive any message in return. Shortly thereafter, Barron, shaving in the bathroom, heard a gunshot. When he stepped out of the bathroom, he saw Damper, who frantically told him C. had been shot. Barron picked up a handgun lying on the bedroom floor and told Damper they needed to leave the apartment. The two then fled in Damper's car. In a vain hope that C. might have survived the shooting, Damper told Barron to dial C.'s cell phone as they headed away. A call was made from Barron's cell phone to C.'s cell

phone at 11:24 a.m. that day; three other calls from Barron to C.'s phone followed shortly thereafter. Five days later, Damper and Barron turned themselves in to the police.

¶ 4 At trial, Damper testified the shooting was accidental. He explained that to show C. how he would defend himself if violence broke out at the King Day event, he had picked up a .45–caliber pistol from atop the stereo in their bedroom. According to Damper, he thought the pistol was empty, but it went off accidentally. The State's forensic pathologist testified C. was killed by a gunshot to the head fired from a distance of approximately two to three feet. He also testified that C. had suffered recent bruising to her neck and exhibited "hemorrhages in the membranes over the inside of the eyelids and eyeballs" consistent with "compression of the neck by an external force, maybe a hand or fingertips."

¶ 5 The jury found Damper guilty of second-degree murder and misconduct involving weapons. It also found the murder to be a dangerous offense and found that Damper committed it while on probation. The court sentenced Damper to a slightly aggravated term of 18 years on the murder charge and a presumptive sentence of 4.5 years on the weapons charge, the sentences to be served concurrently. Damper timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 13–4033 (Supp.2009).

### DISCUSSION

¶ 6 The text message to B. the morning of the shooting was written "part in Spanish and text lingo." B. and a Glendale police detective who viewed the message after the fact translated it as, "Can you come over? Me and Marcus are fighting and I have no gas." Before trial, Damper filed a motion *in limine* to preclude evidence of the text. He argued it was inadmissible hearsay, could not be authenticated pursuant to Arizona Rule of Evidence 901 and that the risk of unfair

---

1. On appeal, we view the evidence in the light most favorable to sustaining the verdict. *State v.* *Tucker,* 205 Ariz. 157, 160 n. 1, 68 P.3d 110, 113 n. 1 (2003).

prejudice substantially outweighed its probative value.

## A. Confrontation Clause.

■ ¶ 7 Damper first argues the superior court's admission of the text message violated his right under the Sixth Amendment to the United States Constitution to confrontation of witnesses.[2] We review *de novo* a superior court's decision to admit evidence over a Confrontation Clause objection. *State v. Real,* 214 Ariz. 232, 234, ¶ 4, 150 P.3d 805, 807 (App.2007).

■ ¶ 8 Because Damper failed to raise this objection in the superior court, we review the issue only for fundamental error. *See State v. Alvarez,* 213 Ariz. 467, 469, ¶ 7, 143 P.3d 668, 670 (App.2006) ("A 'hearsay' objection does not preserve for appellate review a claim that admission of the evidence violated the Confrontation Clause."). Fundamental error goes "to the foundation of the case ... takes from the defendant a right essential to his defense, and [is an] error of such magnitude that the defendant could not possibly have received a fair trial." *Id.* (quoting *State v. Henderson,* 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005)). A criminal defendant bears the burden of proving both that fundamental error occurred and that it resulted in prejudice. *Id.* at ¶ 8.

■ ¶ 9 "The Confrontation Clause prohibits the admission of testimonial hearsay unless (1) the declarant is unavailable and (2) the defendant 'had a prior opportunity to cross-examine' the declarant." *State v. Armstrong,* 218 Ariz. 451, 460, ¶ 32, 189 P.3d 378, 387 (2008) (quoting *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations on hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

■ ¶ 10 Although the Supreme Court has not fully defined the term "testimonial

statement," in *Crawford* it noted that "testimony" means a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." 541 U.S. at 51, 124 S.Ct. 1354 (citation omitted); *see also State v. Boggs,* 218 Ariz. 325, 337, ¶ 56, 185 P.3d 111, 123 (2008). Statements taken during a police interrogation are testimonial for purposes of the Confrontation Clause when "there is no ... ongoing emergency, and ... the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis,* 547 U.S. at 822, 126 S.Ct. 2266. As the Court explained in *Crawford,* "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S. at 51, 124 S.Ct. 1354. On the other hand, a statement to the police is nontestimonial when "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis,* 547 U.S. at 822, 126 S.Ct. 2266. Thus, statements during a 911 call that describe "current circumstances" requiring police assistance are nontestimonial when they are not "designed primarily to 'establis[h]' or 'prov[e]' some past fact." *Id.* at 827, 126 S.Ct. 2266.

■ ¶ 11 Damper argues that because there was a previous domestic violence incident between himself and C, the text was a testimonial message to B. that C. intended as a record of the argument she and Damper had the morning of the shooting. More generally, he contends that because a text message "is a purposeful document typed by hand by the author over the course of some time," a text message is by nature testimonial.

¶ 12 We conclude the text message was not a testimonial statement. Whether it was an urgent cry for help or a more casual request to a friend, nothing in the message or its context suggests C. intended or believed it might later be used in a prosecution or at a trial. *See Davis,* 547 U.S. at 827, 126 S.Ct.

---

**2.** "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

2266 (911 call seeking police assistance was nontestimonial); *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354 (distinguishing "casual remark to an acquaintance" from a testimonial statement). Nor do we agree with Damper that text messages are by nature necessarily testimonial. Like any other form of communication, a text message may be testimonial or non-testimonial, depending upon the circumstances and purpose for which it is made.[3] Because the content and circumstances of the text at issue here demonstrate C. did not send it for "the purpose of establishing or proving some fact," the message was non-testimonial.

¶ 13 For these reasons, the superior court did not violate Damper's rights under the Confrontation Clause when it denied his motion to preclude evidence of the text message.

### B. Hearsay.

■■■■ ¶ 14 Damper next argues the court erred in denying his motion to preclude the text message because it constituted inadmissible hearsay. In denying Damper's motion, the superior court concluded the text message fit within either the present-sense impression or excited utterance exceptions to the hearsay rule. Because in its answering brief the State has waived the argument that the text message qualified as an excited utterance, we address only the court's finding that the text fell within the present-sense impression exception. We review that finding for an abuse of discretion. *See State v. Aguilar*, 209 Ariz. 40, 49, ¶ 29, 97 P.3d 865, 874 (2004).

¶ 15 The Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ariz. R. Evid. 801(c). Hearsay is inadmissible unless an exception applies. Ariz. R. Evid. 802. The text message plainly constitutes hearsay; it is an out-of-court statement offered by the State to prove the truth of the matter asserted, i.e.,

that C. and Damper were fighting shortly before the shooting.

¶ 16 A statement falls within the present-sense impression exception to the hearsay rule if it "describe[s] or explain[s] an event or condition [and is] made while the declarant was perceiving the event or condition, or immediately thereafter." Ariz. R. Evid. 803(1). The exception is based on the notion that "substantial contemporaneity of event and statement" negates the likelihood of fabrication or misrepresentation. *Tucker*, 205 Ariz. at 165–66, ¶ 42, 68 P.3d at 118–19. In other words, we assume "that when the declarant has had little time to reflect on the event she has perceived, her statement will be spontaneous and therefore reliable." *Id.*

¶ 17 The text message at issue described an event, an argument between C. and Damper, perceived by the purported speaker, C, as evidenced by the statement, "Me and Marcus are fighting." Additionally, the speaker's use of the present tense, "are fighting," suggests she sent the message either during her fight with Damper or shortly thereafter. On this record, we cannot conclude the superior court abused its discretion in ruling the text message constituted a present-sense impression. *See id.* at ¶ 47 (hearsay account of telephone call admissible under Rule 803(1) based on evidence that declarant told witness she had "just hung up").

### C. Authentication.

■■■■ ¶ 18 Damper also argues the text message could not be authenticated and lacked sufficient foundation because the State did not prove it was C. who sent the message. Evidence is supported by proper foundation when the proponent offers sufficient evidence to support a finding that the evidence is what the proponent claims it to be. Ariz. R. Evid. 901(a). In ruling on authentication, the superior court "does not determine whether the evidence is authentic, but only whether evidence exists from which the jury could reasonably conclude that it is authentic." *State v. Lavers*, 168 Ariz. 376, 386; 814 P.2d 333, 343 (1991). Accordingly,

---

**3.** Damper argues that creating a text message necessarily is a slow and deliberate act but cites no evidence to dispute common experience, of

which we take judicial notice, that some persons are able to "text" at a rapid-fire pace.

foundation is sufficient when supported by "[t]estimony that a matter is what it is claimed to be." Ariz. R. Evid. 901(b)(1).

¶ 19 Sufficient evidence exists from which the jury reasonably could have concluded the text message B. received was, as the State argued, sent by C. At trial, B. testified she and C. often communicated with text messages. She explained that she had saved C.'s cell-phone number in her own cell phone, denominated by a nickname, and that when the text message at issue arrived the morning of the shooting, her phone displayed that nickname as the sender of the message. *See Dickens v. State,* 175 Md.App. 231, 927 A.2d 32, 37 (2007) (text message authenticated by evidence it was sent from a cell phone in defendant's possession and contained facts known only by defendant). Damper argues anyone with access to the apartment he shared with C. could have sent the message. But C.'s cell phone was found on the bed beside her body after the shooting, and Damper points to no evidence indicating that anyone other than C. used the phone that morning. On this record, the superior court did not err in concluding sufficient evidence existed to properly authenticate the text message.

### D.  Rule 403.

¶ 20 Damper finally contends that even if the text message was otherwise admissible, the superior court erred in admitting it because its prejudicial effect substantially outweighs its probative value. Otherwise admissible relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Ariz. R. Evid. 403. Unfair prejudice exists "if the evidence has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Mott,* 187 Ariz. 536, 545, 931 P.2d 1046, 1055 (1997). Because "the trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice," we give the court broad discretion in making this determination. *State v. Connor,* 215 Ariz. 553, 564, ¶ 39, 161 P.3d 596, 607 (App.2007) (internal quotation omitted).

¶ 21 Damper argues the text message was unfairly prejudicial because it "strongly suggested" that he and C. had a "violent argument" just before her shooting and that Damper thus shot her "in a fit of passion." In the alternative, he argues that the message's probative value is slight because it did not suggest an argument of great significance.

¶ 22 We conclude the superior court did not abuse its discretion in finding that any prejudice that might be caused by admission of the text message was outweighed by its probative value. Damper has made no showing, nor do we discern, that the message had any tendency to cause the jury to decide his case based on an improper basis, such as emotion, sympathy or horror. *See Mott,* 187 Ariz. at 545, 931 P.2d at 1055. Furthermore, the message had significant probative value. Sent at 11:21 a.m., the message tended to show C. and Damper argued immediately before the shooting, which must have occurred prior to Barron's call to C.'s phone at 11:24 a.m., thereby supporting the State's theory that Damper shot her intentionally. *See State v. Wood,* 180 Ariz. 53, 62, 881 P.2d 1158, 1167 (1994) (evidence of previous quarrels between victim and defendant admissible and probative of motive); *State v. Jeffers,* 135 Ariz. 404, 418, 661 P.2d 1105, 1119 (1983) (same). Such evidence is especially probative when, as here, the defendant asserts the shooting was accidental.

### CONCLUSION

¶ 23 For the reasons set forth above, Damper's convictions and sentences are affirmed.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and JON W. THOMPSON, Judge.