NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WILLIAM EUGENE KEMP, JR., *Appellant.*

No. 1 CA-CR 21-0190
FILED 3-28-2023

Appeal from the Superior Court in Maricopa County
No. CR 2018-005818-001
The Honorable Monica S. Garfinkel, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice M. Jones
*Counsel for Appellee*

Bain & Lauritano PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

William Eugene Kemp, Jr., Buckeye
*Appellant*

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

**C A M P B E L L**, Judge:

¶1        William Eugene Kemp, Jr., appeals his convictions and sentences for money laundering in the second degree, assisting a criminal street gang, possession of a dangerous drug for sale in an amount over the statutory threshold (methamphetamine), possession or use of narcotic drugs (heroin), and possession of drug paraphernalia. His previous defense counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, she found no meritorious grounds for reversal. Kemp has filed a supplemental brief. Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Kemp, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶2        After reviewing the record, we requested *Penson*[1] briefing on three issues: (1) "[w]hether the exclusion of testimony about police officers' out-of-court statements regarding the alleged verbal agreement was reversible error"; (2) "[w]hether the trial court's failure to instruct the jury on a justification defense pursuant to A.R.S. § 13-402 was fundamental error"; and (3) "[w]hether the State met its burden, if any, to prove that Kemp's conduct was not justified pursuant to A.R.S. § 13-402." For the following reasons, we affirm.

## BACKGROUND

¶3        One evening in March 2018, while patrolling a residential street in Phoenix, Detectives Molina and Reed watched as a pickup truck made a wide right turn, nearly causing an accident, and then accelerated to about 60 miles per hour. The detectives pulled the truck over, finding Kemp behind the wheel. Kemp told the detectives he was "a validated STG member"—meaning a member of a prison gang designated as a Security

---

[1]        *Penson v. Ohio*, 488 U.S. 75 (1988).

Threat Group by the Arizona Department of Corrections—and indicated there might be a pocketknife somewhere in the truck cab. Detective Molina removed Kemp from the truck and, while patting him down for weapons, obtained Kemp's permission to empty his pockets. In Kemp's pockets, Molina found $110 in cash and a digital scale with a white crystalline residue on it.

¶4            Detective Molina placed Kemp in handcuffs, walked him away from the truck, and continued to search and question him. When asked if there was anything illegal in the truck, Kemp admitted there was "about a[n] ounce" of "dope" in a headphones case near the truck's center console. Molina read Kemp his *Miranda*[2] rights, and then continued questioning him. Meanwhile, Detective Reed searched the truck, finding what was determined to be approximately 27.4 grams of methamphetamine and 4.48 grams of heroin in four small plastic bags inside the headphones case.

¶5            Kemp told Detective Molina that he was associated with the Aryan Brotherhood, that he was known as "Savage" by the Brotherhood, and that he was selling methamphetamine to pay off a $4,500 debt to the Brotherhood. Kemp explained he had been selling drugs "all [his] life" and had bought three ounces of methamphetamine a couple days ago, having sold one ounce and given another to a member of the Brotherhood to pay off $200 of his debt. The State charged Kemp with money laundering in the second degree, a class 3 felony; assisting a criminal street gang, a class 3 felony; possession of dangerous drug for sale in an amount over the statutory threshold (methamphetamine), a class 2 felony; possession or use of narcotic drugs (heroin), a class 4 felony; and possession of drug paraphernalia, a class 6 felony. *See* A.R.S. §§ 13-2317, -2321, -3407, -3408, -3415.[3]

¶6            At trial, the State introduced footage from Detective Molina's body camera (bodycam) and testimony including that of Detectives Molina and Reed as well as a forensic scientist. A criminal investigator with the Arizona Department of Corrections testified about the structure and criminal operations of the Aryan Brotherhood. Kemp testified as well, admitting that he had possessed the scale and the drugs and that he had intended to sell the methamphetamine. However, Kemp claimed he had

---

2        *Miranda v. Arizona*, 384 U.S. 436 (1966).
3        Absent material changes after the relevant dates, we cite a statute's current version.

been approached by Detective Platt and a corrections investigator months before the traffic stop and that they had given him permission to sell methamphetamine. On cross-examination, Kemp agreed when asked whether he was "trying to get at that . . . [police officers] gave [him] permission to sell drugs," even though it is their job "to stop drugs and drug sales[.]" In rebuttal, retired Detective Platt testified that although he remembered interviewing Kemp about the Aryan Brotherhood after a prior arrest, Kemp had never been signed up as a confidential informant—in part because he was still on probation—and had not been authorized to perform any controlled drug sales.

¶7        After a trial, a jury found Kemp guilty on all counts. The jury also found that the State had proven three aggravating circumstances and that Kemp committed the offenses while on probation, with the intent to assist a criminal street gang. *See* A.R.S. § 13-701(D)(6), (11), (27); A.R.S. § 13-708(C); A.R.S. § 13-714. At sentencing, though still represented by counsel, Kemp submitted a pro per "Motion for Mistrial," which the court denied. The superior court sentenced Kemp, as a category three repetitive offender, to concurrent sentences of 22.75 years in prison with 850 days of pre-incarceration credit. *See* A.R.S. § 13-703(C), (J). Kemp timely appealed.

## DISCUSSION

¶8        We address the issues raised in the *Penson* briefing and Kemp's supplemental brief in turn. Finding no meritorious reasons for reversal, we affirm his convictions and sentences.

### I.        Issues Raised in *Penson* Order

#### A.        Failure to Give a Justification Instruction Was Fundamental, But Not Prejudicial Error

¶9        To begin, we consider (1) "[w]hether the trial court's failure to instruct the jury on a justification defense pursuant to A.R.S. § 13-402 was fundamental error"; and (2) "[w]hether the State met its burden, if any, to prove that Kemp's conduct was not justified pursuant to A.R.S. § 13-402." *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 20 (2005) ("[A] defendant must establish both that fundamental error exists and that the error in his case caused him prejudice."). We conclude the court's failure to give a justification instruction was fundamental error but did not prejudice Kemp.

¶10        Under A.R.S. § 13-402, "conduct which would otherwise constitute an offense is justifiable" if "[a] reasonable person would believe such conduct is . . . authorized to assist a peace officer in the performance

of such officer's duties." A.R.S. § 13-402(A), (B)(2) (extending justification even if officers "exceeded [their] legal authority"). "If evidence of justification . . . is presented by the defendant, the state must prove beyond a reasonable doubt that the defendant did not act with justification." A.R.S. § 13-205.

¶11      Because Kemp did not request a justification instruction before the superior court, we review for fundamental error. *See State v. Fierro*, 254 Ariz. 35, 41, ¶ 20 (2022). That is, "the error must be clear, egregious, and curable only via a new trial." *State v. Gendron*, 168 Ariz. 153, 155 (1991). A defendant must show "the error goes to the foundation of the defendant's case, takes away a right essential to the defense, or is of such magnitude that it denied the defendant a fair trial." *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018).

¶12      The "slightest evidence" of justification—"a low standard"— is enough to warrant an instruction. *State v. Wilson*, 253 Ariz. 191, 195, ¶¶ 10–11 (2022) (quotation omitted). "We review the court's decision to deny a jury instruction for an abuse of discretion, but we review de novo whether the evidence supported a justification instruction." *Id.* at 194–95, ¶ 9. "In determining slightest evidence, we view the facts in the light most favorable to the party requesting the instruction and do not weigh the evidence nor resolve evidentiary conflicts." *Id.* at 195, ¶ 11.

¶13      Kemp produced "slightest evidence" of justification by testifying that his actions were "the result of the previous meeting" with Detective Platt and the corrections investigator and that law enforcement "gave [him] permission to sell drugs." And unlike in *Gendron*, where the defendant "specifically disclaimed reliance on a justification defense," justification was Kemp's theory of the case. 168 Ariz. at 154. Because Kemp confessed to the elements of each of his charged offenses, his defense hinged on the theory that his conduct was justified. *See* A.R.S. § 13-402. Without an instruction, the jury had no way to account for Kemp's justification defense and no knowledge of the State's burden under A.R.S. § 13-205. *See State v. Carson*, 243 Ariz. 463, 467–68, ¶¶ 19–20 (2018) (discussing burden-shifting in self-defense context). As a result, failure to give a justification instruction was fundamental error, "tak[ing] away a right essential to [Kemp's] defense." *See Escalante*, 245 Ariz. at 138, ¶ 1.

¶14      Still, for an error to warrant reversal, Kemp must show prejudice, which "involves a fact-intensive inquiry." *See Henderson*, 210 Ariz. at 568, ¶ 26. Because Kemp presented "evidence of justification," the State had to "prove beyond a reasonable doubt that [he] did not act with

justification." *See* A.R.S. § 13-205. Justification is tested objectively, relying on "the beliefs of a 'reasonable person' in the defendant's circumstances rather than the defendant's subjective beliefs." *Carson*, 243 Ariz. at 465, ¶ 9. The inquiry is therefore whether the State proved beyond a reasonable doubt that no reasonable person in Kemp's shoes "would believe [his otherwise criminal] conduct [wa]s . . . authorized to assist a peace officer in the performance of such officer's duties." *See* A.R.S. § 13-402(B)(2).

¶15        As Detective Platt testified, signing up a confidential informant is a "very time-consuming" process. "[The police] don't even try" to sign up confidential informants who are on probation because it's "extremely difficult" and requires proceedings in open court, undermining the confidential nature of the arrangement. Once onboarded, confidential informants cannot "set up deals on [their] own." Platt emphasized that the police use informants only to buy drugs, not to sell them, and only when observed by officers. If an informant is caught selling drugs, the police will "close [hi]m down" and arrest him. More to the point, although Platt recalled being present for a meeting with Kemp, Platt confirmed they did not onboard Kemp as a confidential informant, then or at any time thereafter.

¶16        Platt also noted "there would be no reason" to allow someone who was not a confidential informant to conduct a drug deal. Given this testimony, it does not follow that he or the corrections investigator would have authorized Kemp to acquire and sell drugs with no oversight, particularly while he was on probation. Kemp himself told Detective Molina, "they won't use me until I'm off probation." Any insinuation that Detective Platt was working with Kemp nonetheless is negated by Platt's testimony that he couldn't remember "anything . . . of an investigative value coming from that meeting." Instead, he recalled helping Kemp call his mother and then working to get him into rehab.

¶17        The State proved beyond a reasonable doubt that no reasonable person would have believed that a verified member of the Aryan Brotherhood was authorized to sell methamphetamine while on probation. Therefore, Kemp was not prejudiced by the court's failure to give a justification instruction.

### B.        Exclusion of Testimony as Hearsay Was Not Reversible Error

¶18        Next, we consider "[w]hether the exclusion of testimony about police officers' out-of-court statements regarding the alleged verbal

agreement was reversible error." *See* Ariz. R. Evid. 801(c) (defining hearsay as a statement "the declarant does not make while testifying at the current trial or hearing" that is "offer[ed] in evidence to prove the truth of the matter asserted in the statement"). To be admissible, an out-of-court statement must "fit[] within one of the many exceptions to the rule against hearsay." *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41 (2003).

**¶19** We review evidentiary rulings for an abuse of discretion. *State v. Rodriguez*, 186 Ariz. 240, 250 (1996). An abuse of discretion occurs when "no reasonable judge would have reached the same result under the circumstances." *State v. Armstrong*, 208 Ariz. 345, 354, ¶ 40 (2004). When a defendant has preserved an issue for appeal, we review for harmless error; otherwise, we review for fundamental, prejudicial error. *Henderson*, 210 Ariz. at 567, ¶¶ 18–20.

**¶20** The court excluded Kemp's testimony that he was "[e]ncouraged" to sell drugs and "was given insurance that [the police] would intervene with the prosecutor" as hearsay. At trial, Kemp's counsel argued Kemp should be able to testify about "his present sense impression at the time" of the crime, including that "he felt encouraged" to sell drugs. *See* Ariz. R. Evid. 803(1); *Tucker*, 205 Ariz. at 165, ¶ 42 ("Statements of present sense impressions are deemed reliable because they are made close in time to the events they describe."). Kemp's counsel conceded that Kemp could not say "they told [him] . . . they would intervene."

**¶21** Neither statement is a present sense impression. "A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Ariz. R. Evid. 803(1); *see, e.g.*, *State v. Rendon*, 148 Ariz. 524, 526, 528 (App. 1986) (admitting recording of neighbor's 9-1-1 call describing burglary "as it was taking place"); *State v. Sucharew*, 205 Ariz. 16, 24, ¶¶ 24–26 (App. 2003) (admitting statement, "[t]here goes your Fast and Furious movie," made in real-time as eyewitness watched two cars race by and heard a crash moments later). That is not what happened here. Instead, Kemp recounted—years after the meeting and his ensuing crimes—the nature of his purported agreement with the police. Immediacy, which is the crux of this exception, is absent. *See Tucker*, 205 Ariz. at 165–66, ¶ 42 ("The more time that elapses between the event and the statement, the stronger the possibility that a declarant will attempt, either consciously or subconsciously, to alter his or her description of the event.").

**¶22** As suggested in our *Penson* order, the statements might be better construed as communicating their effect on the listener. *See State v.*

*Hernandez*, 170 Ariz. 301, 306 (App. 1991) ("Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue."). But we are not to second-guess trial counsel or inject a new evidentiary theory on appeal. *State v. Schaaf*, 169 Ariz. 323, 332 (1991); *see also State v. Lopez*, 217 Ariz. 433, 434, ¶ 4 (App. 2008) ("[A]n objection on one ground does not preserve the issue on another ground."). In any case, the reasonableness of Kemp's belief he could lawfully sell drugs hinges on whether there was an agreement to do so. That is, the excluded testimony is necessarily offered for the truth of the matter asserted and not merely to show the effect on the listener.[4] *Cf. Hernandez*, 170 Ariz. at 306 (noting that truth of admitted statements was not at issue).

**¶23** Even if excluding portions of Kemp's testimony were error, it would not be reversible under any standard. *See Escalante*, 245 Ariz. at 144, ¶¶ 29–31 (comparing review for harmless and fundamental error). The excluded testimony was cumulative to Kemp's statements that Detective Platt and the corrections investigator "gave [him] permission to sell drugs," and that his "actions"—the criminal conduct he confessed to on bodycam footage and again at trial—were the result of his meeting with them. Kemp's theory of the case was clear without the excluded testimony. In any case, though the jury was not given a justification instruction, the State proved beyond a reasonable doubt that Kemp's conduct was not justified.

**¶24** Therefore, the court did not abuse its discretion, must less reversibly err, in excluding portions of Kemp's testimony related to police officers' out-of-court statements as hearsay.

## II.    Kemp's Supplemental Brief

**¶25** Kemp filed a supplemental brief, raising five issues. These issues are waived as Kemp fails to develop them or provide citation to the record or legal authority. *See State v. Bolton*, 182 Ariz. 290, 298 (1995); *see also* Ariz. R. Crim. P. 31.10(a)(7). Waiver aside, Kemp's arguments lack merit.

---

[4]    This analysis likewise forecloses any argument that the court erred by preventing Kemp from answering two questions about what was "expected" of him under the purported agreement. In any case, Kemp also failed to make an offer of proof for this testimony, and we therefore cannot find fundamental error. *See* Ariz. R. Evid. 103(a)(2); *State v. Martinez*, 230 Ariz. 208, 219, ¶ 57 (2012) (noting court was "unable to find prejudice" without offer of proof).

¶26        First, Kemp argues the court erred by excluding unspecified evidence. Our above analysis forecloses this argument as much as it refers to the portions of his testimony excluded as hearsay. Alternatively, Kemp may be pointing to the "records" he identified in his "Motion for Mistrial," that would allegedly "contradict" Detective Platt's testimony. When a juror asked whether he had any "evidence . . . of ongoing contact with police," such as "phone records, dates of contacts, text messages, etc.[,]" Kemp indicated he did, but failed to offer those records at trial, thereby waiving any objection. *See State v. Dixon*, 226 Ariz. 545, 554, ¶ 44 (2011); *accord State v. Robertson*, 249 Ariz. 256, 260, ¶ 15 (2020) ("The invited error doctrine prevents a party from injecting error into the record and then profiting from it on appeal." (quotation omitted)).

¶27        Second, Kemp contends his counsel did not "help[] him to navigate [the] legal process." Ineffective assistance of counsel cannot be raised on direct appeal, however; it must be raised in a separate post-conviction proceeding. *State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20 (2007) (citing Ariz. R. Crim. P. 32). Third, Kemp argues the superior court improperly excluded surrebuttal testimony, but Kemp did not try to call any witnesses in surrebuttal. *See* Ariz. R. Evid. 103(a)(2); *Dixon*, 226 Ariz. at 554, ¶ 44 (finding waiver where defendant did not make an offer of proof or mark exhibit for identification).

¶28        Fourth, Kemp argues the court erred by applying a sentence enhancement duplicitous of one of the charges (presumably the A.R.S. § 13-2321 offense and A.R.S. § 13-714 sentence enhancement). *See* A.R.S. § 13-2321 (defining criminal offense of "assisting a criminal street gang"); A.R.S. § 13-714 (enhancing sentence for "[o]ffenses committed with intent to promote, further or assist a criminal street gang"). Not so. "[A] sentence enhancement does not offend double jeopardy." *State v. Harm*, 236 Ariz. 402, 408, ¶ 23 (App. 2015). Moreover, A.R.S. § 13-2321 and § 13-714 do not have identical elements and are therefore not duplicitous. *See id.* at 406–08, ¶¶ 16–20 ("[Section 13-2321] implies some participation by the gang, while [A.R.S. § 13-714] addresses only the intent of the actor.").

¶29        Last, Kemp argues the court erred by admitting altered bodycam footage. Portions of the bodycam footage were muted to eliminate prejudicial information. At trial, Kemp agreed that the portions shown were accurate depictions of the events that occurred, but he took issue with the fact that the footage did not show the conclusion of his conversation with Detectives Molina and Reed. The tape cut out before they put him in the squad car for transport. In essence, Kemp appears to argue the bodycam footage was incomplete and the court erred by failing to require the State

to introduce additional footage. *See* Ariz. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.") Kemp did not object to the incomplete footage, nor did he seek to admit footage of the entire encounter under the rule of optional completeness. *See* Ariz. R. Evid. 106. In sum, Kemp's arguments do not establish trial error.

### III.    Review of the Record

**¶30**         After a thorough review of the record, we find no reversible error.[5] *Clark*, 196 Ariz. at 541, ¶ 50**.** The record reflects Kemp was present and represented by counsel at all critical stages of the proceedings against him. The evidence presented supports the convictions, and the sentences imposed fall within the range permitted by law. As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Kemp's constitutional and statutory rights.

### CONCLUSION

**¶31**         For the reasons above, we affirm Kemp's convictions and sentences, except that we modify Kemp's pre-incarceration credit from 850 days to 851 days.

**¶32**         Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, her obligations are fulfilled once she informs Kemp of the outcome of this appeal and his future

---

[5]         During voir dire, Juror No. 5 (Prospective Juror No. 9) stated that she could not evaluate law enforcement witnesses on equal footing with other witnesses. Although a defendant is entitled to a fair and impartial jury, *State v. Eddington*, 228 Ariz. 361, 363, ¶ 6 (2011), Kemp waived the issue by failing to challenge the juror. *See State v. Rubio*, 219 Ariz. 177, 180, ¶ 8 (App. 2008); *see also State v. Bravo*, 131 Ariz. 168, 170 (App. 1981).

options. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Kemp has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:    AA