IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

STATE OF ARIZONA,
*Appellee*,

*v.*

DEMITRES ROBERTSON,
*Appellant*.

No. CR-19-0175-PR
Filed August 12, 2020

Appeal from the Superior Court in Maricopa County
The Honorable John R. Doody, Judge Pro Tempore
No. CR 2002-015076

Opinion of the Court of Appeals, Division One
246 Ariz. 438 (2019)
**VACATED AND REMANDED**

COUNSEL:

Mark Brnovich, Arizona Attorney General, Michael T. O'Toole, Chief Counsel, Andrew S. Reilly (argued), Jana Zinman, Assistant Attorneys General, Phoenix, Attorneys for State of Arizona

James J. Haas, Maricopa County Public Defender, Lawrence S. Matthew (argued), Deputy Public Defender, Phoenix, Attorneys for Demitres Robertson

Joel Feinman, Pima County Public Defender, David J. Euchner (argued), Abigail Jensen, Deputy Public Defenders, Tucson, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, AND JUSTICES BOLICK and GOULD joined.*

————————

JUSTICE LOPEZ, opinion of the Court:

¶1        We consider whether an appellate court may apply the invited error doctrine to preclude review of an illegal, stipulated sentence in a plea agreement.  We hold that it may not.

## BACKGROUND

¶2        In August 2002, the State charged Demitres Robertson with one count of first degree murder and two counts of intentional child abuse for acts that occurred in November 2001.  If convicted, she faced a mandatory sentence of life imprisonment for the first degree murder charge and a potential mandatory consecutive sentence of up to twenty-eight years' imprisonment for the intentional child abuse charges.

¶3        Pursuant to a plea agreement, Robertson pleaded guilty to reduced charges of manslaughter and reckless child abuse.  The agreement stipulated a sentencing range of eight to fifteen years' imprisonment for the manslaughter conviction and a consecutive term of lifetime probation for the child abuse conviction.  The probation terms provided that "if [she] violate[d] any of the written conditions of [her] probation, [her] probation may be terminated and [she could] be sentenced to any term or terms state[d] [in the agreement] . . . without limitation."  Consistent with the agreement, the trial court sentenced Robertson to ten years' imprisonment for manslaughter and a consecutive term of lifetime probation for child abuse.

¶4        Robertson completed her prison sentence in 2010 and commenced her lifetime probation term.  She violated her probation in 2014 and in 2016, and the trial court reinstated her probation with additional conditions.  In March 2017, following another probation violation, the court imposed intensive probation.  In May 2017, the State filed a petition to revoke probation, alleging Robertson violated her intensive probation.  She contested the petition and argued for the first time at her probation

* Justices James P. Beene and William G. Montgomery have recused themselves from this matter.

violation hearing that her convictions for manslaughter and child abuse comprised a single criminal act against a single victim. Therefore, the stipulated consecutive sentences in her plea agreement resulted in illegal double punishment in violation of A.R.S. § 13-116, which provides, "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."

¶5        The trial court denied Robertson's oral motion to dismiss the petition, revoked her probation, and ordered that she be imprisoned for the presumptive term of three-and-a-half years with 260 days of presentence incarceration credit. Robertson timely appealed.

¶6        The court of appeals declined to address the merits of the sole issue presented on appeal, to wit: whether A.R.S. § 13-116 barred imposition of a consecutive prison sentence on the offense for which Robertson was serving probation. Rather, the court affirmed Robertson's probation revocation and consecutive sentence, finding that she was precluded from challenging her sentence on appeal because she had invited any potential error by stipulating to consecutive sentences in her plea agreement. *State v. Robertson*, 246 Ariz. 438, 440 ¶ 13, 441 ¶¶ 17–18 (App. 2019).

¶7        We granted review to address whether an appellate court may apply the invited error doctrine to preclude review of an allegedly illegal, stipulated sentence in a plea agreement. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

¶8        The court of appeals erred by effectively eliminating a defendant's right to appeal a probation revocation sentence consistent with a plea agreement stipulation. The court of appeals' decision conflicts with *State v. Regenold*, 226 Ariz. 378 (2011), and misapplies the invited error doctrine.

¶9        As an initial matter, we note that the court of appeals resolved this appeal on the basis that Robertson invited sentencing error by entering into the plea agreement, an issue not raised, briefed, or argued by either party or ruled on by the trial court. Although our appellate courts may choose to address issues the parties fail to address in the briefs, *State v. Lopez*, 217 Ariz. 433, 438 ¶ 17 n.4 (App. 2008), they should heed the principles underlying the waiver doctrine intended "to prevent the court from deciding cases with no research assistance or analytical input from the parties," *Meiners v. Indus.*

3

*Comm'n*, 213 Ariz. 536, 538–39 ¶ 8 & n.2 (App. 2006) (quoting *Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459 ¶ 29 (App. 2000)).

**I.**

¶10        The court of appeals acknowledged *Regenold*'s holding that a defendant's "guilty plea does not waive all challenges to a subsequent sentence imposed after a probation violation," but the court reasoned that *Regenold* did not dictate the outcome here. *Robertson*, 246 Ariz. at 440 ¶ 12 (citing *Regenold*, 226 Ariz. at 379–80 ¶¶ 8, 12). We disagree.

¶11        In *Regenold*, the defendant pleaded guilty to one count of luring a minor for sexual exploitation after soliciting sexual conduct with a detective impersonating a fourteen-year-old girl. 226 Ariz. at 378–79 ¶ 2; *see State v. Regenold* ("*Regenold II*"), 227 Ariz. 224, 225 ¶ 2 (App. 2011). The plea agreement stipulated a sentencing range of five to fifteen years in prison. *Id.* The superior court suspended imposition of the sentence and placed Regenold on lifetime probation. *Id.* Later, following a probation violation, the court revoked Regenold's probation and sentenced him, consistent with his plea agreement, to six-and-a-half years in prison. *Id.* at 379 ¶ 3. Regenold appealed. The court of appeals held it had no jurisdiction to consider the appeal because, under A.R.S. § 13-4033(B), "a defendant may not appeal from a judgment or sentence entered pursuant to a plea agreement or an admission to a probation violation." *Id.* We reversed, finding that a pleading defendant who is sentenced to prison following a contested probation violation hearing does not receive a sentence pursuant to the plea agreement, but rather as a consequence of the probation violation. *Id.* ¶ 8. Consequently, because Regenold contested the probation violation, he was entitled to appeal the probation violation and sentence. *Id.* ¶ 12.

¶12        Here, the court of appeals concluded that Robertson's case eluded *Regenold*'s reach. *See Robertson*, 246 Ariz. at 440 ¶¶ 12–13. In so doing, the court announced an implicit "favorability" rule wherein a particularly favorable stipulated sentence pursuant to a plea agreement waives a defendant's appellate rights. The court reasoned that Robertson "affirmatively entered into a plea agreement with the State wherein she avoided the possibility of life in prison plus a consecutive sentence, and she stipulated to a prison sentence on one reduced count and a consecutive term of probation on another reduced count," whereas Regenold merely "plead[ed] guilty and face[d] various potential sentences provided by law." *Id.* The court also noted that Robertson "explicitly bargained for and accepted the possibility of a consecutive prison sentence if she were found to have committed a subsequent violation of the terms of her probation."

*Id.* at 441 ¶ 17. Thus, because Robertson negotiated a favorable plea agreement, and knew the potential consequences of a probation violation, the court held she may not appeal her alleged illegal sentence under § 13-116. *Id.* at 440 ¶ 13.

¶13 We find *Regenold* indistinguishable from this case in all material respects. First, *Regenold* does not distinguish between types of probation violation sentences. *See Regenold*, 226 Ariz. at 379 ¶ 8 ("*Any* punishment imposed after a probation revocation hearing is a consequence that would not exist but for the defendant's violation of probation." (emphasis added)). Second, the "favorability" of a plea agreement is irrelevant to the analysis and is otherwise an unworkable standard because all plea agreements, to some degree, are beneficial to defendants. If stipulating to a plea agreement is always invited error, there could never be an appeal from an illegal sentence imposed after a probation violation, rendering *Regenold* a nullity.

**II.**

¶14 We turn now to the crux of the case—the court of appeals' application of the invited error doctrine to preclude Robertson from challenging the error on appeal. *Robertson*, 246 Ariz. at 441 ¶ 17. We conclude that the court misapplied the doctrine as its decision conflicts with invited error jurisprudence from our Court and the court of appeals.

¶15 "The invited error doctrine prevents a party from injecting error into the record and then profiting from it on appeal." *State v. Rushing*, 243 Ariz. 212, 217 ¶ 14 (2017); *see also State v. Logan*, 200 Ariz. 564, 566 ¶ 11 (2001). We have cautioned against application of the doctrine unless it is clear from the facts that the party asserting the error on appeal is responsible for introducing the error into the record. *State v. Escalante*, 245 Ariz. 135, 145 ¶ 38 (2018) ("[I]f defense counsel invited trial error, strategically or carelessly, the defendant cannot obtain appellate relief . . . ."). Therefore, courts must look "to the source of the error, which must be the party urging the error," before applying the doctrine against a party. *See Logan*, 200 Ariz. at 566 ¶ 11; *State v. Anderson*, 210 Ariz. 327, 337 ¶ 20, 344 ¶¶ 66–67 (2005) (finding defendant invited error by specifically requesting erroneous jury instructions and verdict forms); *State v. Moody*, 208 Ariz. 424, 453 ¶ 111 (2004) (finding a party invited error where he elicited the testimony in question). Courts should be cautious in applying the doctrine, however, because its application precludes appellate relief even when error is fundamental and prejudicial. *See Escalante*, 245 Ariz. at 145 ¶ 38.

¶16 The Arizona court of appeals has held, consistent with our cases, that the invited error doctrine only applies when the facts show the party urging the error initiated, or at least actively defended, the error rather than passively acquiescing in it. *See, e.g.*, *State v. Lucero*, 223 Ariz. 129 (App. 2009); *State v. Thues*, 203 Ariz. 339 (App. 2002). In *Lucero*, the court of appeals concluded that the defendant's counsel was not the source of the error raised on appeal because he neither initiated, nor argued in favor of, the error—rather, he merely acquiesced in it. 223 Ariz. at 138–39 ¶¶ 32–33. And in *Thues*, even though a stipulation had been entered in the record that the defendant had a prior conviction, the court rejected the state's claim of invited error because "[t]he record [did] not reflect which party proposed the stipulation and therefore served as the source of the alleged error." *Thues*, 203 Ariz. at 340 ¶ 4 n.2.

¶17 Here, the court of appeals equated the terms of a plea agreement with a joint evidentiary or instructional stipulation and concluded that the source of an erroneous joint stipulation is irrelevant for purposes of invited error analysis. *See Robertson*, 246 Ariz. at 440 ¶ 15. But the court's conclusion conflicts with *Lucero* and *Thues*. *See Lucero*, 223 Ariz. at 136 ¶ 19 ("[T]he doctrine requires an affirmative invitation of the error by the party now raising the challenge rather than passive acquiescence to it." (quoting 8 Arizona Practice § 29:7 (2008–2009 ed.))); *Thues*, 203 Ariz. at 340 ¶ 4 n.2 ("The record does not reflect which party proposed the stipulation and therefore served as the source of the alleged error."). Yet, the court dismissed those rulings, reasoning that *Lucero* and *Thues* misread *Logan*, and asserting that "neither *Logan* nor other cases from our supreme court support the proposition that only the initial party to propose the stipulation is subject to invited-error analysis." *See Robertson*, 246 Ariz. at 440–41 ¶ 15.

¶18 We reject the court of appeals' interpretation of *Logan*, *Lucero*, and *Thues* and reiterate that courts may apply the invited error doctrine only if the party asserting the error is the source of the error. To hold otherwise would contravene *Logan*'s clear directive. *See Logan*, 200 Ariz. at 566 ¶ 11 (holding the court must look to the "source of the error, which *must* be the party urging the error" (emphasis added)); *Escalante*, 245 Ariz. at 145 ¶ 38 ("'Invited error' occurs when the [appealing party] is the source of that error."). Although the party urging the error need not always be "the initial party to propose" it, the record must be clear that the party urging the error engaged in affirmative, independent action to create the error or argue in favor of it. *See, e.g.*, *State v. Pandeli*, 215 Ariz. 514, 528 ¶¶ 48–50 (2007) (finding that defendant invited error where he responded to judge's question about why prosecution witness' testimony was admissible and then proffered reasons to the court supporting his conclusion).

¶19    The court of appeals cited *State v. Parker*, 231 Ariz. 391 (2013), in support of the propriety of applying the invited error doctrine to situations "where an error results from stipulations in a voluntary plea agreement." *Robertson*, 246 Ariz. at 441 ¶ 16. In *Parker*, the defendant stipulated to admission of his videotaped interviews with police. 231 Ariz. at 405 ¶ 61. We held that the defendant's stipulation "preclude[d] him from asserting on appeal that their admission was error" without discussing whether the state or the defendant was the source of the stipulation. *Id.* Thus, the court of appeals reasoned that *Parker* supported its conclusion that there is no need to inquire as to who proposed the stipulations in the agreement because they reflected "the final product of compromises arrived at after off-the-record negotiations among the parties." *Robertson*, 246 Ariz. at 441 ¶ 16.

¶20    Although *Parker* may invite confusion on this point, we disagree that it permits application of the invited error doctrine to stipulated plea agreements without determining the source of the error. It is true that *Parker* held that the defendant's stipulation to admit a videotape at trial precluded him from claiming error on appeal, and mentioned invited error, but it did not include any discussion of the invited error doctrine. *See Parker*, 231 Ariz. at 406 ¶ 61. Further, *Parker* proceeded to conduct fundamental error analysis and find that any error in admitting the videotape was not fundamental, which is wholly inconsistent with the invited error doctrine and diminishes its precedential value on this point. *Id.*; *cf. Escalante*, 245 Ariz. at 145 ¶ 38 (noting that the invited error doctrine precludes appellate relief even when error is fundamental and prejudicial).

¶21    Thus, in the context of stipulated plea agreements, the invited error doctrine should apply only where "the party took independent affirmative unequivocal action to initiate the error [or actively defended the error] and did not merely fail to object to the error or merely acquiesce in it." *Lucero*, 223 Ariz. at 136 ¶ 21. Because a stipulated plea agreement is a compromise between the state and the defendant, where both parties are involved in creating and agreeing to the terms, it must be clear from the record that the defendant not only agreed to the error but either initiated it or actively defended it. We note, however, given the unequal bargaining power between the state and a defendant, the latter is usually in no position to dictate that specific terms be included in plea agreements. *See, e.g., Coy v. Fields*, 200 Ariz. 442, 446 ¶ 12 (App. 2001) ("The State is generally in the better position to know the correct law . . . and the State must be deemed to know the law it is enforcing." (quoting *State v. Patience*, 944 P.2d 381, 387–88 (Utah App. 1997))).

**III.**

¶22        The court of appeals' opinion is also inconsistent with Arizona law concerning illegal sentences.  Although the invited error doctrine may apply to stipulated plea agreements in limited circumstances, a court cannot apply the invited error doctrine to prevent review of a potentially illegal sentence stemming from a stipulated plea agreement.  To do so would confer on the courts authority to impose an illegal sentence in contravention of Arizona cases and statutory law.

¶23        Arizona Revised Statute § 13-4037(A) provides that trial courts lack authority to impose an illegal sentence:

> Upon an appeal by the defendant either from a judgment of conviction or from sentence, if an illegal sentence has been imposed upon a lawful verdict or finding of guilty by the trial court, the supreme court shall correct the sentence to correspond to the verdict or finding.  The sentence as corrected shall be enforced by the court from which the appeal was taken.

The statute expressly requires this Court to correct an illegal sentence and its terms do not exempt sentences imposed pursuant to stipulated plea agreements.

¶24        The prohibition on illegal sentences is well-settled.  In *Coy*, the court of appeals held that a defendant may challenge an illegal sentence even if the plea agreement expressly authorized it.  200 Ariz. at 444 ¶ 6.  Although principles of contract law typically govern plea agreements, the court determined that where the sentence exceeded the authority authorized by the law, the "judge breached the law, not the plea agreement."  *Id.* at 445 ¶ 10.  The court also noted that, because the state is in control of the plea terms, it "bears the risk" of mistake should the plea result in an illegal sentence.  *Id.* at 446 ¶ 13.

¶25        More recently, in *State ex rel. Polk v. Hancock*, we held that, regardless of a defendant's agreement to a term, the state may not authorize an illegal condition in a plea agreement, nor may a court enforce an illegal provision, because "parties cannot confer authority on the court that the law proscribes."  237 Ariz. 125, 129 ¶ 10 (2015).  We further determined that the state may not rescind a plea agreement because an illegal term is excised from the agreement.  *Id.* at 131 ¶ 22; *see State v. Kinslow*, 165 Ariz. 503, 507 (1990) ("The sentencing provisions enacted by our legislature are mandatory and may not be circumvented by agreements between prosecutors and defendants."); *In re Webb*, 150

Ariz. 293, 294 (1986) ("Courts have power to impose sentences only as authorized by statute and within the limits set by the legislature.").

¶26        The court of appeals on remand in *Regenold* also recognized this principle. The court ruled in Regenold's favor on the merits and ordered that the trial court vacate his sentence and resentence him under the proper range. *Regenold II*, 227 Ariz. at 226–27 ¶ 9. There, the court rejected the state's argument that Regenold "should not be allowed to challenge the legality of a sentence entered in accordance with a plea agreement he voluntarily signed," reasoning that it is impermissible to "allow the superior court to impose an illegal sentence, even if the defendant has agreed to it." *Id.* at 226 ¶ 8.

¶27        Arizona law uniformly prohibits illegal sentences, but we note that other jurisdictions also recognize this prohibition, even when the defendant expressly agreed to the sentence in a plea agreement. *See, e.g.*, *State v. Phelps*, 57 P.3d 624, 628 (Wash. App. 2002) (refusing to apply the invited error doctrine to a sentence where "the sentencing court exceeded its statutory authority"); *State v. Misquadace*, 644 N.W.2d 65, 71 (Minn. 2002) (only allowing a plea agreement to depart from sentencing guidelines in a small number of cases where "substantial and compelling circumstances exist").

¶28        Thus, if Robertson's sentence violates § 13-116, it is an illegal sentence that must be corrected—regardless of whether she invited the error. *See Polk*, 237 Ariz. at 129 ¶ 13 ("The state and a defendant 'may negotiate concerning, and reach an agreement on, any aspect of the case,' Ariz. R. Crim. P. 17.4(a), except as limited by public policy or the law.").

## IV.

¶29        Finally, we note that our recent opinion in *Chaparro v. Shinn*, 248 Ariz. 138 (2020), is inapplicable here. In *Chaparro*, the trial court sentenced the defendant to prison for life without the possibility of parole for twenty-five years despite a statutory prohibition on parole for Chaparro's crime of conviction. *Id.* at 140 ¶ 3. The state did not appeal Chaparro's illegal sentence. *Id.* After serving twenty-four years of his sentence and being notified of his parole ineligibility, Chaparro sought relief in federal court to enforce his illegal sentence. *Id.* ¶ 5. On special action to this Court, the state argued that the sentence was illegal and unenforceable. *Id.* ¶ 7. We rejected the state's argument because, absent an appeal by the state, we lacked jurisdiction to correct the illegal sentence. *Id.* at 142 ¶ 19. We also concluded that the sentence could not be collaterally attacked on its face because "the 'order [was] voidable, rather than void.'" *Id.* ¶ 22 (quoting Ariz. Const. art. 6, § 14). Here, unlike in *Chapparo*, the court of appeals has

jurisdiction to consider Robertson's appeal and, if it determines that her sentence violates § 13-116, to correct her illegal sentence.

## CONCLUSION

¶30      We vacate the holding of the court of appeals' opinion and remand to that court to consider the merits of Robertson's appeal concerning the legality of her sentence under § 13-116 in the first instance.