NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

AMINDA GIEBEL, *Appellant*.

No. 1 CA-CR 19-0432

FILED 10-29-2020

Appeal from the Superior Court in Maricopa County
No. CR2016-002094-002
The Honorable Kathleen H. Mead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Maurice Portly[1] joined.

---

**W I N T H R O P,** Judge:

¶1          Aminda Giebel appeals her convictions and sentences for first-degree murder and child abuse.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[2]

¶2          Giebel was the mother of J.G., who was born in August 2013, and is the mother of a young son.  Giebel's husband, Andrew Isaacs, was J.G.'s stepfather.  The four moved into an apartment with Giebel's friend, Anthony Lawrence, in the summer of 2014; they all lived together through April 2015.  During that time, Lawrence witnessed Isaacs physically abuse both children on a daily basis and frequently in Giebel's presence. Lawrence eventually moved out because of the abuse he saw.

¶3          Brandy Baker also moved into the apartment in early 2015. She too saw Isaacs abuse the children over several months, including when she saw Isaacs pick J.G. up over his head and violently throw her into a playpen.  Baker told Giebel about these incidents, but Giebel took no action. Baker even kept a diary of incidents she witnessed.  When Giebel and Isaacs discovered the diary, they ripped out the pages and burned them.

¶4          In June 2015, Giebel left the children alone with Isaacs at their apartment while she visited a friend.  Around 8:30 p.m., Isaacs called Giebel to tell her that J.G. had hit her head.  Concerned, Giebel returned home, arriving around 9:30 p.m.  Giebel saw J.G. was covered in bruises and cuts,

---

[1]     The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2]     We view the evidence in the light most favorable to sustaining the verdicts and resolve reasonable inferences against Giebel.  *See State v. Stroud*, 209 Ariz. 410, 412, ¶ 6 (2005).

vomiting, and having trouble breathing. Giebel repeatedly asked Isaacs what happened to J.G.

¶5        Giebel called her mother, who advised Giebel to take J.G. to the hospital. Giebel did not take her child to the hospital, even refusing a friend's offer to drive them, because she was afraid the Department of Child Services would get involved if they sought help. Over the next several hours, Giebel exchanged numerous text messages with her mother, expressing fear for J.G.'s health. Around 1:00 a.m., J.G. lost consciousness. Giebel sent a text message, "Mom, please . . . I need your help. She won't talk, move. I'm freaking out."

¶6        Isaacs finally called 9-1-1 at 1:34 a.m. By the time the police and emergency medical personnel arrived, J.G. was dead. A medical examiner determined her cause of death was "[b]lunt force torso trauma." She had three broken ribs and a torn duodenum.

¶7        A pediatric surgeon reviewed J.G.'s case and agreed with the medical examiner's determination. The pediatrician found that the torn duodenum caused J.G.'s death and it resulted from nonaccidental trauma. At trial, the pediatrician testified that J.G. would have looked like she was dying, based on her reported severe pain and other visible symptoms. Another doctor testified that J.G.'s outward signs of distress would make it "obvious to anybody that [she was] in grave condition." Nonetheless, the pediatrician testified that J.G. remained treatable even within an hour before her death.

¶8        The State charged Giebel with first-degree murder, a Class 1 felony and domestic violence offense, and child abuse, a Class 2 felony and dangerous crime against children. After a fifteen-day trial, the jury convicted Giebel as charged. The superior court sentenced her to life imprisonment with the possibility of release after 35 years for the murder conviction and a consecutive term of 15 years' imprisonment for the child-abuse conviction. Giebel appeals, and this court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**ANALYSIS**

I.        *Admission of Autopsy Photographs*

¶9        Giebel first argues the superior court erred by admitting several "gruesome" autopsy photographs of J.G. Specifically, she challenges Exhibits 162 through 164. Exhibits 162 and 163 showed J.G.'s

duodenal injury, and Exhibit 164 depicted J.G.'s fractured ribs. Because Giebel objected to the admission of Exhibits 163 and 164, we review for abuse of discretion. *See State v. Bocharski*, 200 Ariz. 50, 56, ¶ 27 (2001). But Giebel did not object to Exhibit 162, and we thus review this photo only for fundamental error resulting in prejudice.[3] *See State v. Escalante*, 245 Ariz. 135, 140, 142, ¶¶ 12-13, 21 (2018).

¶**10**        In determining whether the superior court erred in admitting a photograph, we consider "(1) the photograph's relevance, (2) its tendency to inflame the jury, and (3) its probative value compared to its potential to cause unfair prejudice." *State v. Cota*, 229 Ariz. 136, 147-48, ¶ 46 (2012). "[A]ny photograph of the deceased in any murder case [is relevant] because the fact and cause of death are always relevant in a murder prosecution." *State v. Spreitz*, 190 Ariz. 129, 142 (1997) (quoting *State v. Chapple*, 135 Ariz. 281, 288 (1983), *superseded by statute on other grounds*). Photographs of a deceased victim may also be relevant to show the nature and location of an injury, illustrate or explain testimony, corroborate the evidence, determine the degree of a crime, or support the State's theory of the case. *See State v. Anderson*, 210 Ariz. 327, 339-40, ¶ 39 (2005). Even gruesome or inflammatory photographs are admissible, as long as they are not offered solely for the purpose of inflaming the jury. *State v. Morris*, 215 Ariz. 324, 339, ¶ 70 (2007).

¶**11**        At trial, Giebel argued the photographs were (1) unduly inflammatory and (2) irrelevant because she did not contest the cause of death.[4] The State responded that the photographs would help its medical experts explain the cause, mechanism, and timing of J.G.'s death and describe her symptoms from the injuries. The superior court admitted the exhibits, explicitly finding that their probative value outweighed the danger of unfair prejudice.

---

[3]        The State argues Giebel invited any purported error in admitting Exhibit 162, citing defense counsel's statement to "ask that [Exhibit 162] be the one to be admitted." But when taken in context, it appears Giebel merely acquiesced to the exhibit's admission, while arguing to exclude numerous exhibits. *See State v. Robertson*, 249 Ariz. 256, 260, ¶ 15 (2020) (explaining invited error). On this record, we cannot find she is barred from appellate relief based on invited error. *Id.* (directing appellate courts to use caution in finding invited error).

[4]        As discussed *supra* n.3, Giebel later withdrew her objection to Exhibit 162.

¶12        The State then used Exhibits 162 and 163 to explain the doctor's testimony that J.G.'s duodenal tear caused her death and the injury was rare, significant, unnatural, and nonaccidental.  Based on the injury's severity, the prosecutor also elicited testimony from the doctor that on a "scale of 1 to 10," J.G.'s pain would have been a "10."

¶13        With respect to Exhibit 164, the State elicited testimony from two doctors that J.G.'s rib fractures were new and acute, resulting in severe and symptomatic pain.  And one of the doctors used the exhibit to explain why the fractures did not occur during attempts to resuscitate J.G., rebutting Giebel's contention the fractures were caused by chest compressions during CPR.

¶14        On this record, the superior court committed no error, fundamental or otherwise.  The State had to prove Giebel intentionally or knowingly failed to seek medical care for J.G. under life-threatening circumstances, causing her death.  *See* A.R.S. §§ 13-1105(A)(2), -3623(A)(1). To that end, the prosecutor told the jurors in closing argument, "Had [Giebel] gotten the medical care that her daughter so desperately needed, [J.G.] would be alive today," but Giebel "didn't lift a finger to help."  The exhibits illustrated the nature, extent, and location of J.G.'s injuries, and they aided the medical doctors in explaining J.G.'s cause of death and why her life-threatening symptoms would have been obvious to Giebel.  Thus, the exhibits were relevant and helped the jury resolve factual disputes and reach its verdict.

¶15        Although the court acknowledged the exhibits were "disturbing" and "sad," the judge also noted that "the jury knows [the State is] talking about the death of a child."  And as the court reasoned, photographs cannot be deemed sufficiently gruesome to inflame the jurors when, as here, "the crime committed was so atrocious that photographs could add little to the repugnance felt by anyone who heard the testimony." *State v. Roscoe*, 145 Ariz. 212, 223 (1984).

¶16        Giebel also complains that because she did not contest the cause of death, the photographs were irrelevant.  But "[e]ven if a defendant does not contest certain issues, photographs are still admissible if relevant because the 'burden to prove every element of a crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense.'" *State v. Dickens*, 187 Ariz. 1, 18 (1996) (quoting *Estelle v. McGuire*, 502 U.S. 62, 69 (1991)), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239 (2012); *see also State v. Castaneda*, 150 Ariz. 382, 391 (1986) ("While it may be true that the subject-matter of a photograph can be described adequately

with words, that is not the test of admissibility.").  Accordingly, the court did not err in admitting the photographs.

## II.     Jury Instructions

**¶17**        Giebel next contends the superior court committed reversible error by denying her motion to instruct the jurors on the lesser-included offense of negligent child abuse.  We review a superior court's denial of a requested jury instruction for abuse of discretion.  *State v. Johnson*, 212 Ariz. 425, 431, ¶ 15 (2006).

**¶18**        "A party is entitled to an instruction on any theory reasonably supported by the evidence."  *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16 (1998). A defendant is entitled to a lesser-included-offense instruction if two conditions are met: "The jury must be able to find (a) that the State failed to prove an element of the greater offense and (b) that the evidence is sufficient to support a conviction on the lesser offense."  *State v. Wall*, 212 Ariz. 1, 4, ¶ 18 (2006).  "It is not enough that, as a theoretical matter, 'the jury might simply disbelieve the state's evidence on one element of the crime' because this 'would require instructions on all offenses theoretically included' in every charged offense."  *Id.* (quoting *State v. Caldera*, 141 Ariz. 634, 637 (1984)).  To avoid such an untenable result, "the evidence must be such that a rational juror could conclude that defendant committed only the lesser offense."  *Id.*  In any event, we will not reverse a court's "refusal unless the defendant suffered prejudice as a result."  *State v. Garfield*, 208 Ariz. 275, 278, ¶ 11 (App. 2004).

**¶19**        Before trial, Giebel requested the superior court to instruct the jurors on the lesser-included offenses of reckless and negligent child abuse. *See* A.R.S. § 13-3623(A)(2), (3).  After the State rested, the court denied her request for a negligent-child-abuse instruction at that point, determining it saw insufficient evidence to support a theory that Giebel's conduct was only negligent.  *See Wall*, 212 Ariz. at 4, ¶ 18.  But the court granted her request to instruct the jurors on reckless child abuse.  *See In re William G.*, 192 Ariz. 208, 213 n.1 (App. 1997) (explaining criminal negligence differs from recklessness because negligence "requires only a *failure to perceive a risk*, as compared to the recklessness requirement of an *awareness and conscious disregard* of the risk") (emphasis added).

**¶20**        After Giebel testified, she renewed her request for a negligent-child-abuse instruction, citing her testimony that she was not aware J.G. was in a dangerous condition.  The superior court again denied her request. The judge identified numerous statements from Giebel's testimony that

refuted her contention that she failed to perceive J.G.'s condition. The court concluded the evidence still did not support the instruction, even after hearing Giebel's testimony.

¶21 The record demonstrates the superior court properly considered the evidence in determining whether to instruct the jurors on lesser-included offenses. Given the extensive and symptomatic nature of J.G.'s injuries, there was no evidence from which a reasonable juror could conclude Giebel only failed to perceive J.G.'s condition. *See Wall*, 212 Ariz. at 4, ¶ 18. As the court reasoned, Giebel's own text messages, prior statements, and testimony revealed her awareness that J.G. needed urgent medical care. We further note that, on appeal, Giebel fails to identify a single item of evidence to support her theory that she merely "failed to perceive" J.G.'s condition and the risks associated with denying or delaying medical intervention.

¶22 The superior court did not abuse its discretion in denying Giebel's request for a negligent-child-abuse instruction. Moreover, given that the jury convicted Giebel of intentional or knowing child abuse rather than the lesser charge of reckless child abuse, any purported error by the court's refusal to instruct on additional lesser-included offenses is necessarily harmless. *See State v. White*, 144 Ariz. 245, 247 (1985) ("[B]y finding defendant guilty of the highest offense, to the exclusion of the immediately lesser-included offense . . . the jury necessarily rejected all other lesser-included offenses.").

### III. Aggravating Factor

¶23 Citing *Blakely v. Washington*, 542 U.S. 296 (2004), and *Boykin v. Alabama*, 395 U.S. 238 (1969), Giebel asserts the superior court erred by conducting an incomplete colloquy before accepting her admission to an aggravating factor. Because Giebel did not object at trial, we review only for fundamental, prejudicial error. *See Escalante*, 245 Ariz. at 140, 142, ¶¶ 12-13, 21.

¶24 While the jurors were deliberating, the parties notified the superior court they had reached a stipulation on aggravating factors, in the event Giebel was convicted. In return for Giebel's admission that the offenses were committed in the presence of a child (her then-four-year-old son), the State would not seek to prove other aggravators to the jury. Although the court engaged Giebel in a brief colloquy, she contends the court violated due process by not more fully informing her of her constitutional rights. *See* Ariz. R. Crim. P. 17.1-17.4.

¶25 Notwithstanding Giebel's assertion, the superior court ultimately imposed the minimum term permitted by law on the murder conviction, *see* A.R.S. § 13-751(A)(3), and a partially mitigated term on the child-abuse conviction, *see* A.R.S. § 13-705(D). The superior court does not err by considering an aggravating factor not found by the jury when it does rely on that factor to "exceed the statutory maximum allowed by the jury verdicts alone," which is the presumptive term. *State v. Johnson*, 210 Ariz. 438, 441, ¶¶ 10, 13 (App. 2005). Accordingly, Giebel's argument is moot, as the court did not aggravate her sentences. *See id.*

¶26 Moreover, "*Blakely* error . . . can be harmless if no reasonable jury, on the basis of the evidence before it, could have failed to find [the factors] necessary to expose the defendant to the sentence imposed." *State v. Hampton*, 213 Ariz. 167, 183, ¶ 72 (2006). No reasonable juror in this case could fail to find that Giebel's offenses occurred in the presence of her son, especially given that Giebel repeatedly testified that her son was with her on the night in question. Accordingly, Giebel has not satisfied her burden to show that any claimed error resulted in prejudice. *See Escalante*, 245 Ariz. at 140, 142, ¶¶ 12-13, 21.

## CONCLUSION

¶27 For the foregoing reasons, we affirm Giebel's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA