IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DEPENDENCY AS TO L.P.

No. 1 CA-JV 24-0173

FILED 04-17-2025

Appeal from the Superior Court in Maricopa County
No. JD535193
The Honorable David J. Palmer, Judge

## AFFIRMED IN PART, VACATED AND REMANDED IN PART

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Mother*

By Thomas A. Vierling
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Jennifer Blum
*Counsel for Appellee*

---

## OPINION

Vice Chief Judge Randall M. Howe delivered the Opinion of the Court, in which Presiding Judge Brian Y. Furuya and Judge Samuel A. Thumma joined.

---

**H O W E**, Judge:

**¶1**        Shaniah H. ("Mother") and Braydon P. ("Father") appeal from the juvenile court's order adjudicating their child L.P. dependent as to both parents. We affirm L.P.'s dependency as to Mother but vacate the dependency as to Father because Father's paternity was not established at the time of the adjudication. *See In re Dependency as to G.R.*, 255 Ariz. 444, 448 ¶ 22 (App. 2023).

**¶2**        In so deciding, we clarify that the juvenile court lacks jurisdiction to find a child dependent as to an alleged biological father without first finding the alleged father's paternity. In other words, even if the alleged father does not dispute paternity at a contested dependency adjudication, the juvenile court must first find the father's paternity of the child before it properly may find the child dependent as to the father.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶3**        Father and Mother are not married. In October 2022, Mother gave birth to H.P., who was born with significant medical needs. After receiving a report that Mother and Father were homeless, dealing with mental-health issues, and unprepared to care for H.P.'s special medical needs, the Department of Child Safety ("DCS") removed H.P. and petitioned in November 2022 to declare him dependent because of the parents' neglect and mental illnesses. Mother engaged in services, and the juvenile court dismissed the petition in May 2023.

**¶4**        In March 2024, H.P. died while in the parents' care in circumstances indicating neglect, if not abuse, of the child. Neither parent checked on H.P. for sixteen hours before his death, and the subsequent police investigation found the apartment in an unsanitary condition, with food, trash, and animal feces strewn throughout. The medical examiner listed H.P.'s cause of death as "undetermined."

¶5         A few weeks later, in April 2024, Mother gave birth to L.P. Given both the circumstances of H.P.'s death and a police investigation causing significant concerns about the condition of the home, DCS removed L.P. from parents' care and filed a petition alleging the child was dependent on the grounds of neglect and unmanaged mental illness. DCS alleged that Mother and Father were not married, L.P.'s birth record was not available, and "[i]t is unknown whether he has established his paternity or any presumption of paternity of [L.P.]"

¶6         DCS referred Mother and Father for services, which the court ordered, including psychological evaluations, parenting support, and drug testing. Mother stated that her mental state contributed to the home's condition. Mother engaged in some services sporadically but not others. Father engaged only with Family Connections, believing that he did not need other services. In May 2024, after L.P.'s removal, Mother participated in a mental-health treatment intake assessment, where she reported that she did not have children and had no involvement with DCS. She also reported that she had not felt "sad" more than two days in the last month. In late July 2024, Mother stopped attending behavioral therapy to save money to purchase a car.

¶7         Before the dependency adjudication, the court ordered Father to undergo genetic testing, but the paternity results were unavailable at the hearing. At the hearing, Father's counsel claimed that he was on the birth certificate and stated that he was not contesting paternity. But the birth certificate was not offered into evidence and Father's counsel asked if the court "is accepting that he's on the birth certificate and that paternity is established, or if the Court wants to wait for the test results to come back." When the court responded, "Okay," Father's counsel clarified that Father "does not want to continue either. He wants to resolve the issue."

¶8         Only the DCS case manager testified at the dependency hearing. She testified that, although Mother and Father's present apartment was appropriate, their underlying mental-health concerns that had led to their previous home's hazardous condition remained unaddressed. She further testified that Mother had not been transparent in treatment about her mental-health issues and had refused to participate in a psychological evaluation. The case manager was concerned about returning L.P. to Mother because Mother's previous home was in disarray within a year of moving in and Mother was not currently engaging in counseling to address her mental-health issues.

¶9          The court found L.P. dependent as to both parents on the ground of inability to parent due to neglect and mental illness. In its order, the court made no finding regarding Father's alleged paternity of L.P. Two months later, the court granted DCS summary judgment on Father's paternity of L.P. Both parents appealed. We have jurisdiction. A.R.S. §§ 8-235(A), 12-120.21(A), 12-2101(A); Ariz. R.P. Juv. Ct. 601(a).

## DISCUSSION

¶10          We review the superior court's dependency order for an abuse of discretion, *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50 ¶ 13 (App. 2016), and accept its findings of fact unless clearly erroneous, *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 233 ¶ 10 (App. 2007). This Court affirms a finding of dependency unless no reasonable evidence supports it. *Joelle M. v. Dep't of Child Safety*, 245 Ariz. 525, 527 ¶ 9 (App. 2018).

## I.      Father's Paternity

¶11          Father argues on appeal that the court erred by adjudicating him dependent without first determining paternity. Although DCS concedes that his paternity was not established at the hearing, it argues Father invited the error by urging the court to resolve the dependency petition or at the very least waived the issue by failing to object.

¶12          When paternity is relevant to prove DCS's allegations, "the parties must address, and the court must resolve, relevant paternity issues *before* the court determines dependency." *In re G.R.*, 255 Ariz. at 448 ¶ 22 (emphasis added). The court must resolve paternity first because a person who is not a legal parent has "no parental rights." *Id.* at 447 ¶ 14; *see* A.R.S. § 25-401(4); *Pima Cnty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 96 (1994). Thus, when DCS files a dependency petition against an alleged father, establishing paternity is a jurisdictional requirement to proceed with the dependency. *See In re G.R.*, 255 Ariz. at 449 ¶ 30 ("[G]iven the allegations in the petition, [the court] could not enter a dependency finding against [father] without first resolving the pending paternity issue."); A.R.S. § 8-844(C)(1)(a)(i) (The court must find that it "has jurisdiction over the subject matter and the person before the court.").

¶13          Father's paternity was necessary to prove DCS's allegations that he is unable or unwilling to exercise proper and effective parental care and control. *See* A.R.S. § 8-201(15)(a)(i). Under this ground, a "dependent child" is one "who has no *parent* . . . willing to exercise or capable of exercising such care and control." *Id.* (emphasis added). But "'[p]arent' does not include a person whose paternity has not been established pursuant to

A.R.S. § 25-812 or § 25-814." Ariz. R.P. Juv. Ct. 102(v). Thus, to find L.P. dependent as to Father under this ground, the court was required to first find that Father is L.P.'s biological parent. *See In re G.R.*, 255 Ariz. at 449 ¶ 25 ("[T]he court could have found this allegation true only if [the father] were [the child's] parent.").

**¶14** Although the court noted that it could have waited for the paternity test results before ruling on the dependency petition, it did not wait. Without making any finding of paternity at the hearing or in its written ruling, it found L.P. dependent as to Father. The court found Father is L.P.'s biological parent in a separate order issued *two months later*. Because the juvenile court can consider only "circumstances existing at the time of the adjudication," *Shella H.*, 239 Ariz. at 50 ¶ 12, the court erred by finding L.P. dependent as to Father without first finding his paternity, *In re G.R.*, 255 Ariz. at 449 ¶ 30.

**¶15** DCS argues that Father either invited the error or waived any error because he asserted that he was on the birth certificate and conceded that he was not contesting paternity. "The invited error doctrine prevents a party from injecting error into the record and then profiting from it on appeal." *State v. Rushing*, 243 Ariz. 212, 217 ¶ 14 (2017). It applies only "when the facts show the party urging the error initiated, or at least actively defended, the error rather than passively acquiescing in it." *State v. Robertson*, 249 Ariz. 256, 260 ¶ 16 (2020). Further, a party's failure to raise an argument or to object in the juvenile court results in fundamental error review of the claimed error. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447 ¶ 37 (2018).

**¶16** DCS incorrectly frames the issue as if the court had found paternity before determining dependency. But even if we accept that Father invited the court to find his paternity of L.P., the court *did not* find paternity before determining dependency or in the dependency finding itself. Thus, the issue is not whether the court wrongly found paternity based on Father's counsel's statements. Rather, the issue is whether the court could find L.P. dependent as to Father *without first* determining Father's paternity. Father did not invite any error because he never urged the court to decide the dependency matter without first determining paternity. He also did not waive the court's requirement to determine paternity because such finding is both statutorily and jurisdictionally required. *See* A.R.S. § 8-844(C)(1) (directing the court to make required findings when adjudicating a child dependent); *Dowling v. Stapley*, 221 Ariz. 251, 264 ¶ 38 n.13 (App. 2009) ("Generally, subject matter jurisdiction of the superior court cannot be

waived."). Thus, the court lacked jurisdiction to consider the dependency petition as to Father.

## II. Mother

**¶17** Mother argues the court abused its discretion by finding L.P. dependent as to her on the ground of inability to parent because of neglect and mental illness. She argues it did not focus on the "circumstances existing at the time of the adjudication hearing," *Shella H.*, 239 Ariz. at 50 ¶ 12, but instead on the state of her home at the time of H.P.'s death.

**¶18** "A child may be dependent when a parent is *currently* unwilling or unable to protect the child from abuse or neglect." *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 299 ¶ 28 (2020); *see* A.R.S. § 8-201(25)(a) (neglect includes the inability or unwillingness of a parent to provide his or her child with supervision, food, clothing, shelter or medical care if the result is an unreasonable risk of harm to the child's health or welfare). "[T]he court must determine whether a child is dependent based upon the circumstances existing at the time of the adjudication hearing." *Shella H.*, 239 Ariz. at 50 ¶ 12. "A parent's prior failure to protect may be evidence of that parent's continuing inability to care for the child when: '(1) the [prior] conditions were sufficient to declare the child dependent; (2) the threat giving rise to those conditions remains unresolved; and (3) the threat continues to pose an imminent risk of harm to the child.'" *Francine C.*, 249 Ariz. at 299 ¶ 28 (quoting *Aaron W. v. DCS*, 1 CA-JV 19-0039, 2019 WL 4695887, at *8 ¶ 37 (Ariz. App. Sept. 26, 2019) (mem. decision)).

**¶19** In its order, the court focused on Mother's condition at the time of H.P.'s death, finding that "as of that date, Mother and Father were unable to provide a safe home for a child, whether it be the now-deceased [H.P.], or [L.P.]." But the court also found that "[t]he video evidence introduced in this matter further supports the allegations that Mother and Father are *still* unable to effectively and safely parent [L.P.]." (Emphasis added.) Thus, although the court considered events before the dependency hearing, it ultimately considered these events in determining Mother's ability to parent at the time of the hearing.

**¶20** Reasonable evidence supports the court's finding that Mother was unable to effectively parent L.P. at the time of the dependency adjudication because of neglect and mental illness. *See Joelle M.*, 245 Ariz. at 527 ¶ 9. During the hearing, the case manager testified about Mother's long history of mental-health issues both before and after the death of H.P. She further testified that although Mother had received some treatment, she

had not been transparent to providers about all her issues and had stopped services before the hearing. The case manager explained that these mental-health issues contributed to the hazardous state of Mother's home at H.P.'s death and, because the issues remained untreated, presented a risk of harm to L.P. *See Francine C.*, 249 Ariz. at 299 ¶ 28 (the court may consider evidence of the parent's prior failure to protect when the underlying issue remains unresolved and poses an imminent threat of harm to the child). The court did not err by finding L.P. dependent as to Mother.

## CONCLUSION

**¶21**　　　　For these reasons, we affirm the court's finding L.P. dependent as to Mother but vacate its dependency finding as to Father. Because the court has found Father's paternity of L.P. since the dependency hearing, the court may proceed with a new dependency adjudication of Father, assuming compliance with other laws and procedures.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:　　　　JR